UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM RAY WILLIAMS,                    Case No. 10-12143

           Plaintiff,                    Arthur J. Tarnow
v.                                       United States District Judge

COMMISSIONER OF SOCIAL SECURITY,    Michael Hluchaniuk
                                         United States Magistrate Judge
           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 10)**

## I.    PROCEDURAL HISTORY

    A.    Proceedings in this Court

On May 28, 2010, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Arthur J. Tarnow referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits. (Dkt. 2). This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 9, 10).

    B.    Administrative Proceedings

Plaintiff filed the instant claims on December 20, 2004, alleging that he

became unable to work on May 3, 2004. (Dkt. 7). The claim was initially

disapproved by the Commissioner on March 29, 2005. (Dkt. 7, Tr. at 35-39).

Plaintiff requested a hearing and on October 16, 2007, plaintiff appeared with

counsel before Administrative Law Judge (ALJ) Joel G. Fina, who considered the

case *de novo*. In a decision dated November 15, 2007 , the ALJ found that

plaintiff was not disabled. (Dkt. 7, Tr. at 13-26). Plaintiff requested a review of

this decision on January 28, 2008. (Dkt. 7, Tr. at 9-12). The ALJ's decision

became the final decision of the Commissioner when, after the review of

additional exhibits[1] (AC-1 and 2, Dkt. 7, Tr. at 2), the Appeals Council, on March

24, 2010, denied plaintiff's request for review. (Dkt. 7, Tr. at 3-5); *Wilson v.

Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that the

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED,** that this matter be **REMANDED** for further

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

Report and Recommendation
Cross-Motions for Summary Judgment
*Williams v. Comm'r*; Case No. 10-12143

proceedings, and that the findings of the Commissioner be **REVERSED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was fifty-four years of age at the time of the most recent administrative hearing.  (Dkt. 7, Tr. at 25).  Plaintiff's relevant work history included approximately twenty-six years as a copula operator in the auto industry. (Dkt. 7, Tr. at 57).  In denying plaintiff's claims, defendant Commissioner considered cervical fusions in neck/limited mobility as a possible bases of disability.   (Dkt. 7, Tr. at 56).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff meets the insured status requirements of the Social Security Act through September 30, 2010.  At step two, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 3, 2006.  (Dkt. 7, Tr. at 18).  At step three, the ALJ found that plaintiff's degenerative disc disease of the cervical spine with radiculopathy, post fusion surgery with surgical plats, torn right rotator cuff, and post fracture right ulna were "severe" within the meaning of the second sequential step.  *Id*.  At step four, the ALJ found that plaintiff could not perform his relevant past work, but had the residual functional capacity to perform light work.  (Dkt. 7, Tr. at 22).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs

available in the national economy.  (Dkt. 7, Tr. at 25).

     B.     <u>Plaintiff's Claims of Error</u>

Plaintiff was within one month of becoming an individual closely approaching advanced age, according to the Medical Vocational Guidelines, as of the alleged onset.  Plaintiff points out that even with the RFC used in the denial dated November 15, 2007, the ALJ concluded that he could not return to his past relevant work and that there were no skills transferable.  Thus, if he were limited to sedentary work, he would qualify for disability benefits under Medical Vocational Guideline (the Grids) 201.14.  The RFC in the denial limits plaintiff to "light work" as defined by the regulations that allows for a sit/stand option alternating at will.  (Tr. 22).  Thus, the jobs listed of general office clerk, cashier and shipping and receiving clerk must be light because they require the ability to lift up to the maximum weight required of 20 pounds.  However, plaintiff points out that, according to testimony, as far as lifting is concerned, "I haven't really tested my full [str]ength, but the most that I like to lift at a given time was maybe about 15, 10 or 15 pounds."  (Tr. 471).  Therefore, based on his own, plaintiff would not be able to perform light work because he can not lift the required maximum 20 pounds and can not lift 10 pounds frequently.  Plaintiff argues that the only proof needed for an approval in the case at hand is that he is limited to sedentary work.  Once that has been established, he qualifies for benefits under the

Grids.

In support of his argument that he is limited to sedentary work, plaintiff relies on the medical source statements completed by both of his treating doctors, his primary care physician and his neurologist, which limit him to, at most, a range of sedentary work. (Tr. 366, 372). Plaintiff also points to objective medical evidence to support their opinions. First he cites an MRI of the lumbar spine dated March 28, 2004 that was done because of low back pain down right leg showed "a large bulging disc at L3-L4, which is causing right neural foraminal narrowing and is causing effacement of the right anterolateral aspect of the thecal sac. The right-sided component is much larger than the left." (Tr. 129). Plaintiff says these findings are consistent with the symptoms that led to the MRI study being performed as well as the fact that plaintiff was continuously diagnosed with a lumbar radiculopathy. (Tr.119-124). Plaintiff has also consistently been diagnosed with carpal tunnel syndrome and cubital tunnel syndrome. An EMG of the right upper extremity only by Dr. Hysni on June 30, 2005, showed evidence of moderate right carpal tunnel syndrome (median nerve entrapment at wrist) affecting sensory and motor components. This electrodiagnostic study reveals evidence of an ulnar neuropathy across the elbow, chronic in nature. (Tr. 312). An earlier EMG by Dr. Levin, the treating neurologist, also showed evidence of bilateral carpal tunnel syndrome and right cubital tunnel syndrome. (Tr. 118)

Plaintiff asserts that, despite these medical records of evidence, the ALJ did not include carpal tunnel syndrome, cubital tunnel syndrome or degenerative disc disease of the lumbar spine as a severe impairment and did not explain why these conditions were not severe impairments, as he did with the depression diagnosis. (Tr. 21-22).

As far as his neck is concerned, plaintiff has a long history of neck surgeries dating back to 1994, as well as 1998.  (Tr. 265, 246).  The earnings record shows that he returned to the work setting after those two fusion procedures and earned a substantial amount of money.  (Tr. 52).  Plaintiff then suffered another injury at work in March 2004 that caused him to stop working in 2004 and again seek treatment for his cervical condition.  (Tr. 148).  After failing conservative treatment with cervical epidural steroid injections, plaintiff underwent another operative procedure on February 8, 2005.  (Tr. 147, 210).

According to plaintiff, the case should be reversed and benefits awarded under Grid 201.14.  In the alternative, plaintiff asks that the case should be remanded for further proceedings to properly and fully consider and evaluate the opinions of plaintiff's two treating physicians, the medical records of evidence and the maximum exertional ability that he would be capable of sustaining on a regular and full-time basis, 8 hours a day, 5 days a week, 40 hours a week.

C.    Commissioner's Motion for Summary Judgment

The Commissioner acknowledges that, while plaintiff is correct that a treating physician's medical opinion may be entitled to great or sometimes controlling weight, such an opinion is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. The ALJ acknowledged the opinions of Drs. Levin and Minasian that "suggest[ed] the claimant is unable to perform substantial gainful activity." (Tr. 24). The ALJ observed that "[t]here is little if any evidence from Dr. Minasian supporting any mental or physical limitations." (Tr. 24). According to the Commissioner, it appears that this report is the only evidence in the record from Dr. Minasian. More specifically, the record appears to lack any treatment notes from Dr. Minasian that would support his very pessimistic opinion. Consequently, the Commissioner asserts that the ALJ had good reason for rejecting Dr. Minasian's conclusory opinion. With respect to Dr. Levin's opinion, the ALJ declined to the very pessimistic limitations contained there in because the opinion was "not fully supported by the medical evidence or even the claimant's testimony at the hearing." (Tr. 24). Dr. Levin had opined that plaintiff could lift/carry/upward pull less than 10 pounds; stand/walk less than two hours in an 8-hour day; and sit (with normal breaks) less than 6 hours during an 8-hour day. (Tr. 372). Dr. Levin also

opined that out of 160 hours per month, plaintiff's limitations would disrupt a regular job 160 hours. (Tr. 372). However, as the ALJ noted, plaintiff estimated at his hearing that he could lift 10-15 pounds, sit up to 40-60 minutes at a time; and stand/walk 30-40 minutes at a time. (Tr. 471-72). He also testified that he could kneel, crawl, and climb a ladder. (Tr. 473). This testimony is not consistent with Dr. Levin's opinion. Moreover, according to the Commissioner, the clinical findings from Dr. Levin's physical examinations of plaintiff do not support his very pessimistic opinion. On March 4, 2004, Dr. Levin reported that plaintiff's cranial nerves were intact, shoulder shrug movements were within normal limits, and there was mild lumbar paraspinal muscle spasm. (Tr. 123). The Commissioner notes that there is a dearth of other physical examination findings from Dr. Levin. And, Dr. Levin's own opinion cites absolutely no objective medical evidence to support the limitations he provided. Because Dr. Levin's opinion was unsupported and inconsistent with other evidence in the record, the Commissioner asserts that the ALJ reasonably declined to accept his very pessimistic opinion.

Plaintiff suggests that he cannot perform light work because of his need for a sit/stand option. Plaintiff apparently contends he is unable to lift the weight required by light work, suggesting that he is limited to sedentary work. However, according to the Commissioner, plaintiff ignores the fact that the ALJ did not find

that plaintiff could perform a *full range* of light work.  For this very reason, the

ALJ called on the services of a VE.  At the hearing, the ALJ asked the VE to

consider an individual with a specific vocational profile and RFC with a limited

range of light work.  (Tr. 491, 493-94).  The ALJ asked the VE whether such an

individual would be able to perform other work.  (Tr. 493-94).  The VE testified

that such an individual would be able to perform other unskilled, light jobs

including: cashier (7,800 jobs available in the region and 70,000 nationally);

general office clerk (4,550 jobs regionally and 48,500 nationally); and shipping

and receiving clerk (2,580 jobs available in the region and 28,300 nationally.  (Tr.

494).  According to the Commissioner, the hypothetical question on which the

ALJ relied included all of plaintiff's limitations to the extent the ALJ found them

credible and supported by the evidence of record.  Accordingly, the ALJ was

entitled to rely on the VE's testimony in response to the hypothetical question and

the VE's testimony substantially supports the ALJ's finding that plaintiff can

perform a significant number of jobs despite his functional limitations.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in

substantial gainful activity, benefits are denied without
further analysis.

Step Two:  If the claimant does not have a severe
impairment or combination of impairments, that
"significantly limits ... physical or mental ability to do
basic work activities," benefits are denied without
further analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusion

In weighing the opinions and medical evidence, the ALJ must consider

relevant factors such as the length, nature and extent of the treating relationship,

the frequency of examination, the medical specialty of the treating physician, the

opinion's evidentiary support, and its consistency with the record as a whole.  20

C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source

is entitled to more weight than a non-examining source and a treating physician's

opinion is entitled to more weight than a consultative physician who only

examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision

denying benefits "must contain specific reasons for the weight given to the

treating source's medical opinion, supported by the evidence in the case record,

and must be sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's opinion and the reasons for

that weight."  Soc.Sec.R. 96-2p, 1996 WL 374188, *5 (1996).  The opinion of a

treating physician should be given controlling weight if it is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" and is "not

inconsistent with the other substantial evidence in [the] case record."  *Wilson*, 378

F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source

if the claimant sees her "with a frequency consistent with accepted medical

practice for the type of treatment and/or evaluation required for [the] medical

condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating

physician's opinion, 'he must set forth the reasons for rejecting the opinion in his

decision.'"  *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation

omitted).  "Claimants are entitled to receive good reasons for the weight accorded

their treating sources independent of their substantive right to receive disability

benefits."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  "The

opinion of a non-examining physician, on the other hand, 'is entitled to little

weight if it is contrary to the opinion of the claimant's treating physician.'"
*Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).  Courts have
remanded the Commissioner's decisions when they have failed to articulate "good
reasons" for not crediting the opinion of a treating source, as § 1527(d)(2)
requires.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing,
*Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to
remand when the Commissioner has not provided 'good reasons' for the weight
given to a treating physician's opinion and we will continue remanding when we
encounter opinions from ALJ's that do not comprehensively set forth the reasons
for the weight assigned to a treating physician's opinion.").

        An "ALJ may not substitute his own medical judgment for that of the
treating physician where the opinion of the treating physician is supported by the
medical evidence."  *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir. 2006),
citing, *McCain v. Dir.*, *Office of Workers Comp. Programs*, 58 Fed.Appx. 184,
193 (6th Cir. 2003) (citation omitted); *see also Schmidt v. Sullivan*, 914 F.2d 117,
118 (7th Cir. 1990) ("But judges, including administrative law judges of the Social
Security Administration, must be careful not to succumb to the temptation to play
doctor.").

        In this case, when evaluating the treating physician evidence, the ALJ did
not consider all of the factors 20 C.F.R. § 404.1527(d)(2)-(6).  As set forth above,

in weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. While the ALJ considered the evidentiary support for the opinions, he did not expressly consider the other factors.  The ALJ did not have sufficient evidence in the record to consider these factors, because none of the post-2004 records from plaintiff's primary treating physicians are contained in the record.  Both physicians opined in 2007 regarding plaintiff's limitation "as of 2005", but none of their records from this time frame are included in the record.  Thus, the ALJ could not have conducted the required analysis to determine whether their opinions should be given controlling weight.  Significantly an "ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence."  *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir. 2006), citing, *McCain v. Dir.*, *Office of Workers Comp. Programs*, 58 Fed.Appx. 184, 193 (6th Cir. 2003) (citation omitted); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.").

More importantly, under circumstances such as those presented here, when

evaluating the opinions of treating physicians, the ALJ must also consider

contacting the treating source for clarification and to obtain the treating records on

which the opinions are based:

> Because treating source evidence (including opinion
> evidence) is important, if the evidence does not support a
> treating source's opinion on any issue reserved to the
> Commissioner and the adjudicator cannot ascertain the
> basis of the opinion from the case record, the adjudicator
> must make "every reasonable effort" to recontact the
> source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, *6; *see also* 20 C.F.R. § 404.1527(c), 20 C.F.R.

§ 404.1512(e); *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) (The ALJ has a duty

to investigate the facts and develop the arguments both for and against granting

benefits.); *D'Angelo v. Soc. Sec. Comm'r*, 475 F.Supp.2d 716 (W.D. Mich. 2007)

(Where an ALJ discounts the opinions of a treating physician because the record

includes virtually no medical records of plaintiff's treatment with that physician,

the ALJ should perform a further investigation pursuant to SSR 96-5p.).  The

regulation requires the ALJ to give good reasons for the weight given to the

treating source's opinion and, if this procedural requirement is not met, a remand

may be required even if the decision is otherwise supported by substantial

evidence.  *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-45 (6th

Cir. 2004).  Here the ALJ discounted the opinions of two treating physicians, but

only had their ultimate conclusions and no records from the post-2004 time.  This

is critical because both physicians opined regarding plaintiff's specific functional limitations, as of 2005.

Much of the ALJ's analysis focused on plaintiff's credibility. To be sure, there appeared to be significant reasons in the record to doubt plaintiff's credibility. However, again, most of that evidence pre-dated plaintiff's injury in 2005, which appeared to cause a worsening of many of his symptoms and conditions. For example, the ALJ found it extremely significant that plaintiff had told one physician that he had run 10 miles in 2005. However, this "run" occurred immediately prior to plaintiff's new injury and presentment to the emergency room. While plaintiff claims to have been disabled as of May, 2004 and that claim may be seriously undermined as indicated in the ALJ's credibility analysis, the record is replete with a change in circumstance in 2005 when plaintiff suffered a serious fall. Plaintiff was insured through September 20, 2010. Thus, while the ALJ may have correctly concluded that plaintiff was not disabled from May 2004 through sometime in 2005, he was obligated to determine whether plaintiff became disabled at any time through the date of the hearing and decision, which occurring in October and November, 2007, respectively. To conduct any such analysis, the ALJ needed to have before him the extensive treatment and testing in this time frame by the two treating physicians who opined regarding plaintiff's extensive limitations, which was not part of the record. In addition, The

20

Commissioner argued that the treating physicians' opinions regarding plaintiff's lifting limitations were inconsistent with plaintiff's own testimony about what he could lift. However, the record is replete with evidence that plaintiff often overworked himself, risking or actually causing re-injury, rather than strictly sticking with the physical limitations imposed by his physicians. Thus, given the need to obtain and reexamine the treating physician evidence, the ALJ should also reconsider his credibility examination.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED,** that this matter be **REMANDED** for further proceedings, and that the findings of the Commissioner be **REVERSED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 22, 2011     s/Michael Hluchaniuk
            Michael Hluchaniuk
            United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 22, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Mikel E. Lupisella, Judith E. Levy, AUSA, and the Commissioner of Social Security.

         s/Darlene Chubb
         Judicial Assistant
         (810) 341-7850
         darlene_chubb@mied.uscourts.gov